DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**STEVEN KENNETH KAISER,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D20-2265

[August 11, 2021]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, St. Lucie County; Robert E. Belanger, Judge; L.T. Case No. 562016CF002712A.

Carey Haughwout, Public Defender, and L.K.S. Fagan, Assistant Public Defender, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Melynda L. Melear, Senior Assistant Attorney General, West Palm Beach, for appellee.

PER CURIAM.

Steven Kaiser appeals a final judgment revoking his probation. He argues the circuit court committed reversible error by sentencing him to a term of imprisonment, rather than modifying or continuing his probation in accordance with section 948.06(2)(f)1.c., Florida Statutes (2019). We affirm.

A violation of probation affidavit was filed alleging Kaiser violated two conditions of his probation. The first violation alleged that Kaiser failed "to live and remain at liberty without violating any law." The second alleged that Kaiser "us[ed] intoxicants to excess or possessing any drugs or narcotics, unless prescribed by a physician."

The probation officer's violation report states that when she was packaging Kaiser's urine sample, Kaiser admitted to using methamphetamine. And in his "Positive Drug Usage Statement," Kaiser wrote in the comments that he "smoked a pipe or tube and regret[ed] it."

Kaiser subsequently pled guilty to the two probation violations. When he did so, he pled guilty to violating the law. He also pled guilty to "possession of a drug or narcotic not prescribed by a physician, to-wit: Methamphetamine." He does

not challenge his plea. Only the ramifications.

Kaiser argues the court was required to modify or continue his probation instead of revoking it because, he argues, he satisfied all four conditions of section 948.06(2)(f)1., Florida Statutes (2019).[1] He argues his probation was revoked for what the statute defines as a low-risk violation. Specifically, a "positive drug or alcohol test result." § 948.06(9)(b)1., Fla. Stat. (2019).

But Kaiser's probation was not revoked for a "positive drug or alcohol test *result*." *Id.* (emphasis added). While a test *result* led to the filing of the violation of probation affidavit, it is the guilty plea to the two violations, including that he possessed and smoked methamphetamine, that makes section 948.06(2)(f)1. unavailable to him.

*Affirmed.*

KUNTZ and ARTAU, JJ., concur.
GROSS, J., dissents with opinion.

GROSS, J., dissenting.

To reach its conclusion, the majority has ignored the plain language of a statute and violated basic rules of statutory construction. As a result, the legislative intent—to conserve tax dollars by requiring non-incarcerative sentencing options—has been frustrated.

The proper result in this case is to reverse, holding that the trial court erred in sentencing appellant to prison, rather than modifying or continuing his probation as required by section 948.06(2)(f), Florida Statutes (2019).

Originally, Steven Kaiser was charged with one count of giving false information to a pawnbroker and one count of dealing in stolen property. In 2017, he entered a no contest plea to both charges for the negotiated sentence of three years in the Department of Corrections followed by two years of probation on each count, to be served concurrently. The trial court adjudicated Kaiser guilty of both charges, and sentenced him in accordance with the

---

[1] Kaiser accepts that he was required to satisfy all of the four elements of section 948.06(2)(f)1. He does so based on *Owens v. State*, 303 So. 3d 993 (Fla. 1st DCA 2020). *Owens* held that section 948.06(2)(f)1. required a probationer to satisfy all four elements of the subsection instead of "any" of the four elements as the language of the statute indicated. We are neither adopting that construction nor expressing an opinion as to it. We also note that the legislature has since rewritten the statute to reflect that all four elements must be satisfied. *See* Ch. 2021-210, Laws of Fla. (effective June 29, 2021).

2

negotiated plea. Two of the conditions of probation were that he "live without violating any law" and "not use intoxicants to excess or possess any drugs or narcotics unless prescribed by a physician."

After serving his prison time, Kaiser began the probationary portion of his sentence. In December 2019, his probation officer filed a violation of probation report (the "Report"). In the Report, the probation officer alleged that Kaiser violated two conditions of probation: "Condition (5) of the Order of Probation, by failing to live and remain at liberty without violating any law" and "Condition (7) of the Order of Probation, by using intoxicants to excess or possessing any drugs or narcotics, unless prescribed by a physician."

As factual support for the charges, the probation officer stated that (1) Kaiser's December 2019 drug screen of his urine tested positive for amphetamines and methamphetamines, and (2) Kaiser signed a statement admitting to smoking "[a]mphetamines/[m]ethamphetamines on or about 12/03/2019."

In the recommendation portion of the Report, the probation officer recommended that the trial court sentence Kaiser to one year of community control. The officer described the violation as a "technical violation," and stated that she "would like to give the offender one more chance to be successful on community supervision with the strictest form of community supervision."

In October 2020, Kaiser admitted to the violation of probation as part of an open plea.

After the trial court accepted Kaiser's plea, his attorney argued that he "qualifies for a mandatory modification of probation under 948.06(2)."

The trial court found that the allegations of the Report supported a new law violation, and commented that he and other judges do not like when their discretion is taken away by mandatory sentencing statutes. The State urged the court to sentence Kaiser to 12 years in prison; the judge imposed a sentence of 60 months in prison.

Kaiser argues that the trial court erred in refusing to sentence him pursuant to the mandatory provision contained in section 948.06(2)(f), Florida Statutes (2019).

Section 948.06(2)(f) states:

> (f) 1. Except as provided in subparagraph 3. or upon waiver by the probationer, the court shall modify or continue a probationary term upon finding a probationer in violation when any of the following applies:

a. The term of supervision is probation.

b. The probationer does not qualify as a violent felony offender of special concern, as defined in paragraph (8)(b).

c. The violation is a low-risk technical violation, as defined in paragraph (9)(b).

d. The court has not previously found the probationer in violation of his or her probation pursuant to a filed violation of probation affidavit during the current term of supervision. A probationer who has successfully completed sanctions through the alternative sanctioning program is eligible for mandatory modification or continuation of his or her probation.

§ 948.06(2)(f), Fla. Stat. (2019). The statute became effective on October 1, 2019. *See Bradley v. State*, 303 So. 3d 1018, 1018 (Fla. 1st DCA 2020).

To define a "low-risk technical violation," section 948.06(2)(f)1.c. adopts the definition of "low-risk violation" in subsection 948.06(9)(b), Florida Statutes (2019), which states in pertinent part:

(b) As used in this subsection, the term "low-risk violation," when committed by a probationer, means any of the following:

1. A positive drug or alcohol test result.

\* \* \*

§ 948.06(9)(b)1., Fla. Stat. (2019).[2]

---

[2] The other listed "low-risk violations" are:

2. Failure to report to the probation office.
3. Failure to report a change in address or other required information.
4. Failure to attend a required class, treatment or counseling session, or meeting.
5. Failure to submit to a drug or alcohol test.
6. A violation of curfew.
7. Failure to meet a monthly quota on any required probation condition, including, but not limited to, making restitution payments, paying court costs, or completing community service hours.
8. Leaving the county without permission.
9. Failure to report a change in employment.
10. Associating with a person engaged in criminal activity.
11. Any other violation as determined by administrative order of the chief judge of the circuit.

4

Case law has massaged the language of section 948.06(2)(f).

First, the statute uses the phrase "when *any* of the following applies" before the list of four conditions in subsections a. through d. *Id.* (emphasis added). This suggests that the statute's mandatory sentencing provisions would apply when any one of the a. through d. subsections applied.

However, applying the absurdity doctrine, the First District has held that a probationer must meet *all* four requirements to qualify for sentencing under section 948.06(2)(f), reasoning that "it seems clear that the Legislature intended section 948.06(2)(f) 1[.] [to] apply only to persons who meet all four conditions." *Owens v. State*, 303 So. 3d 993, 998 (Fla. 1st DCA 2020). The Fifth District came to the same conclusion in *Kirk v. State*, 303 So. 3d 604, 606 (Fla. 5th DCA 2020). The courts found that if "any" did not mean "all" in section 948.06(2)(f), then the conditions listed in subsection b. through d. would be superfluous, since the condition in subsection a. is that the probationer is on probation, and "anyone found to have violated probation must, of course, be on probation." *Owens*, 303 So. 3d at 997; *Kirk*, 303 So. 3d at 606.[3]

Additionally, the First District has held "that the plain language of 948.06(2)(f)1.c. is clear and unambiguous and applies only to probationers with a *single violation* of probation." *Schmidt v. State*, 310 So. 3d 135, 137 (Fla. 1st DCA 2020) (emphasis added). The court in *Schmidt* found that, because the legislature used the language, "*[t]he violation* is a low-risk technical violation, as defined in paragraph (9)(b)" in section 948.06(2)(f)1.c., the legislature unambiguously intended the statute to apply only when there is a *single* low-risk violation. *Id.* at 136–37.

Kaiser does not challenge either of these interpretations of the statute; he accepts that he must meet all four requirements of section 948.06(2)(f)1., and that there can be only one low-risk violation. On the other hand, the State does not dispute that Kaiser met three of the four requirements.

The central issue on appeal is whether Kaiser met the requirement of subsection 948.06(2)(f)1.c.: "The violation is a low-risk technical violation, as defined in paragraph (9)(b)." § 948.06(2)(f)1.c., Fla. Stat. (2019).

The statute defines a low-risk technical violation as "[a] positive drug . . . test result." § 948.06(9)(b)1., Fla. Stat. (2019). Here, the violation that triggered the violation of probation proceeding was a positive drug test. Almost every positive drug test arises from the possession of an illegal drug. To split a positive drug

§ 948.06(9)(b), Fla. Stat. (2019).

[3] In 2021, the legislature corrected this anomaly in the wording of the statute. *See* Ch. 21-210, § 1. Laws of Fla.; Fla. HB 661, § 1 (2021).

test into two violations—the failed drug test and illegal possession of a controlled substance—would always preclude a positive drug test from qualifying for the mandatory sentencing provision of section 948.06(2)(f)1.

This result is contrary to the plain language of the statute and the legislative intent to show leniency to certain probationers for a first violation of probation. We must defer to the legislative intent as expressed in the statute's plain language. Kaiser came within the plain language of the statute because his violation was a "positive drug test." Every positive drug test result necessarily involves the possession of the ingested drug. Therefore, the trial court was required to "modify or continue [the] probationary term" as section 948.06(2)(f)1. provides.

Appellant's interpretation of the statute is further supported by the canons of statutory construction. Under the harmonious-reading canon, "there can be no justification for needlessly rendering provisions in conflict if they can be interpreted harmoniously." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 180 (2012). "The purpose for this canon is to make the provisions of the statutory text be interpreted in a 'compatible' not 'contradictory' manner." *Morgan v. State*, 295 So. 3d 833, 836 (Fla. 4th DCA 2020).

The majority has not interpreted the statute as a harmonious whole, as it has allowed a positive drug test that qualifies as a "low-risk violation" under section 948.06(9)(b)1. to disqualify a probationer from the mandatory sentencing provision because it is also proof of a "felony, misdemeanor, or criminal traffic offense" under section 948.06(9)(d)2. This reading of the statute forces a narrow construction upon section 948.06(9)(b)1., thereby frustrating the legislature's intent. Such a reading "would not give meaning to the whole of the statutory amendment and would be absurd." *Owens*, 303 So. 3d at 997.

Finally, even if reading section 948.06(9)(b)1. together with section 948.06(9)(d)2. creates an ambiguity in the statute, the rule of lenity provides that "any ambiguity or situations in which statutory language is susceptible to differing constructions must be resolved in favor of the person charged with an offense." *State v. Byars*, 823 So. 2d 740, 742 (Fla. 2002). Thus, even if the majority's application of the statute were reasonable, the rule of lenity requires that we construe the statute in the light most favorable to the accused, so that "[a] positive drug or alcohol test result" is read to include the possession of the drug or alcohol detected in the test.

*       *       *

***Not final until disposition of timely filed motion for rehearing.***

6